IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GEORGE T. FARLEY; VIRGINIA FARLEY, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CASE NO. CV 03-B-3392-S |
| CENTRAL UNITED LIFE INSURANCE CO.; FORREST L. JOHNSON, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This case is presently pending before the court on plaintiffs' Motion to Remand. (Doc. 4.)[1] Plaintiffs, George T. and Virginia Farley, filed this case in the Circuit Court of Jefferson County, Alabama, Bessemer Division, seeking damages from defendants Central United Insurance Company and Forrest L. Johnson for bad faith refusal to pay insurance benefits, breach of contract, breach of duty of fair dealing and good faith, and fraud. (*See* doc. 1, Ex. A.) Defendants removed this case, (*see* docs. 1 and 2),[2] and, plaintiffs, in response, have moved the court to remand this case to state court on the grounds that the court lacks subject matter jurisdiction and that defendants' Notice of Removal was untimely filed, (*see* doc. 4). Upon consideration of the record, the submissions of the parties, the

---

[1]Reference to document number, ["Doc."], refers to the number assigned to each document filed in the court's record.

[2]Defendant Central United Life Insurance Co. filed a Notice of Removal, (doc. 1), which defendant Forrest L. Johnson joined, (doc. 2).

arguments of counsel, and the relevant law, the court is of the opinion that plaintiffs' Motion to Remand, (doc. 4), is due to be granted.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiffs, George T. Farley and Virginia Farley, filed the present action in the Bessemer Division of the Circuit Court of Jefferson County, Alabama, on May 20, 2003. (Doc. 1, Ex. A.) In their Complaint, plaintiffs allege that, on or before February 26, 1993, defendant Forrest L. Johnson, acting as the agent for Commonwealth National Life Insurance Company [Commonwealth], told plaintiffs that "the cancer insurance policy he was selling to [them] would pay as benefits actual charges incurred for various cancer treatments, including but not limited to, chemotherapy treatments." (*Id.* at 7-8.) Plaintiffs contend that Johnson's representation was false. (*Id.* at 8.) Shortly thereafter, Commonwealth issued Mr. Farley a cancer treatment policy. (*Id.* at 3.)

In 1997, defendant Central United Life Insurance Company ["Central United"], acquired Mr. Farley's policy from Commonwealth. (Def. Resp. to Mot. to Remand at 5-6, and ex. C, Pls. Mem. in Supp. of Mot. to Remand, at 10.)

In 1999, Mr. Farley was diagnosed with cancer. (Def. Resp. to Mot. to Remand at 6 and ex. C at 11.) He received treatment for his cancer, and Central United paid benefits based on the amount set forth on his treatment providers' statements, what defendants refer to as the so-called "list price" for the treatments. (Def. Resp. to Mot. to Remand at 6 and ex. C at 11.) In 2002, Mr. Farley's cancer returned. (Def. Resp. to Mot. to Remand at 6; doc. 1, Ex. A at 3.) Again he submitted his treatment providers' statements; however, Central

2

United did not pay benefits according to the so-called "list price." (Doc. 1, Ex. A at 3; Def. Resp. to Mot. to Remand at 6-7.)

In February of 2003, Central United began a review of payments made under Mr. Farley's policy; this investigation revealed that the providers of Mr. Farley's cancer treatments had accepted partial payments from Medicare as full payment for his cancer treatments. (Def. Resp. to Mot. to Remand at 6-7 and ex. C at 11-12.) Central United contends:

> The provider[s'] statements that insureds had been sending in as documentation of the "actual charges" for their chemotherapy and radiation treatments, in fact, contained the "list price" . . . for those services. Those amounts were not the amounts that the providers expected to receive or accepted as payment in full for their services.

(Def. Resp. to Mot. to Remand at 7.) Central United argues that it began a review of the payments made under Mr. Farley's policy –

> because it realized for the first time that providers were actually expecting to receive and were, in fact, receiving as payment in full amounts that were significantly less than the amount listed on the provider[s'] statements submitted to Central United – the amount Central United had been paying. That is, medical providers were "actually charging" amounts for their services that were considerably less than the amount Central United had previously been paying as benefits to its insureds. After receiving several payments tied to the amount actually charged for [Mr. Farley's] cancer treatments rather than the inflated amounts on [Mr. Farley's] provider[s'] statements, Plaintiffs filed the instant lawsuit.

(*Id.* at 6-7 (internal citations omitted).)

Central United contends that this case was not removable when filed because the Farleys and Johnson are residents of Alabama and because plaintiffs "vaguely pleaded" the

3

facts in their Complaint; therefore, "there was no way [it] could [have known] in good faith that Plaintiffs had no possibility of stating a valid fraud claim against Johnson . . . ." (*Id.* at 26.)[1] It contends that the case became removable when Mrs. Farley testified, at her deposition on November 25, 2003, that Johnson never told her anything that was untrue. (*Id.*) Mrs. Farley testified in her deposition that Johnson told her that the policy would pay "actual charges." (*See* Def. Resp. to Mot. to Remand, ex. C at 10 (citations omitted).) Commonwealth, and later Central United, actually paid the "list price" of Mr. Farley's cancer treatments until 2003, when Central United reconsidered its policy. (*Id.* at 11-12.) Nothing in the record indicates that Johnson made any statement or representation to either plaintiff after 1993.

Defendants filed the Notice of Removal on December 23, 2003, (doc. 1 and 2), more than 30 days after they were served, but less than 30 days after Mrs. Farley's deposition. Central United alleges that this court has subject matter jurisdiction based on the complete diversity of the parties because plaintiffs, Alabama residents, fraudulently joined Johnson, an Alabama resident, a fact which Central United alleges it first discovered during Mrs. Farley's deposition on November 23, 2003. (Doc. 1 ¶¶ 4-5.) On January 22, 2004, plaintiffs filed a Motion to Remand, which Central United opposes.

---

[1]Defendant Johnson did not join Central United in its Response to Plaintiffs' Motion to Remand.

## II. DISCUSSION

Plaintiffs contend that this matter is due to be remanded to the Circuit Court of Jefferson County, Alabama, Bessemer Division, because this court lacks subject matter jurisdiction and because the Notice of Removal is procedurally defective. Central United contends that this court has subject matter jurisdiction because Johnson was fraudulently joined and because plaintiffs have waived any procedural defect in the Notice of Removal.

### A. REMOVAL PROCEDURES

Defendants filed their Notice of Removal after Mrs. Farley's deposition, which was more than 30 days after they were served with the Complaint. Pursuant to 28 U.S.C. § 1446(b) –

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .
>
> ***If the case stated by the initial pleading is not removable***, a notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it ***may first be ascertained that the case is one which is or has become removable*** . . . .

28 U.S.C. § 1446(b)(emphasis added).

"This time limitation [for filing a Notice of Removal] is not jurisdictional and may be waived by the plaintiff." *Newman v. Spectrum Stores, Inc.*, 109 F. Supp. 2d 1342, 1345 (M.D. Ala. 2000)(citing *Getty Oil Corp., Div. of Texaco, Inc. v. Insurance Co. of North Am.*, 841 F.2d 1254, 1263 (5th Cir. 1988)). "Nevertheless, the time limitation is mandatory and

5

'must be strictly construed.'" *Id.* (citing *Webster v. Dow*, 925 F. Supp. 727, 729 (M.D. Ala. 1996); *Production Stamping Corp. v. Maryland Cas. Co.*, 829 F. Supp. 1074, 1076 (E.D. Wis. 1993)). "[T]he plain purpose of the language of 28 U.S.C. § 1446(b) is to permit the removal period to begin only after the defendant is able to *ascertain intelligently* that the requisites of removability are present." *Clingan v. Celtic Life Insurance Co.*, 244 F. Supp. 2d 1298, 1302 (M.D. Ala. 2003)(internal quotations and citations omitted, emphasis added). Therefore, this court must determine when defendants were "able to ascertain intelligently that the requisites of removability [were] present." *See id.* If defendants were able to ascertain intelligently that the Complaint was removable when received, they cannot rely upon a latter-filed or received paper. If, on the other hand, the Complaint "discloses that the case [was] not removable," defendants may rely upon the latter-filed or received paper. *See Knudsen v. Samuels*, 715 F. Supp. 1505, 1507 (D. Kan. 1989)("[U]nder 28 U.S.C. § 1446(b), the question is not whether the initial pleading discloses the *potential for removal* but whether it discloses that the case is *not removable*.")(emphasis added).

Central United contends that this action was initially not removable "because a notice of removal could not have been filed in good faith under [Fed. R. Civ. P.] Rule 11 until Mrs. Farley was questioned under oath about the exact representations allegedly made to Plaintiffs by Johnson. Without that testimony, a claim of fraudulent joinder would have been premature and inconclusive." (Def. Resp. to Mot. to Remand at 3.) It argues that the Complaint, because of its lack of detail, did not "conclusively establish that there [was] *no*

6

*possibility* that Plaintiffs [could] state a valid fraud claim against Johnson without the deposition of one of the Plaintiffs." (*Id.* at 25 (emphasis in original).)

Central United contends that, because plaintiffs failed to include certain information in their Complaint, it was required to take Mrs. Farley's deposition before it could in good faith determine that plaintiffs had fraudulently joined Johnson.  However, in determining whether the Complaint precluded the removal of this action to federal court at the time the initial pleading was served, the court considers "any information [defendants] may be charged with under the law." *Clingan*, 244 F. Supp. 2d at 1303.  Therefore, Central United "cannot base the timing of [its] notice of removal on information allegedly obtained for the first time in [some other paper] when it legally possessed that information at an earlier date." *Id.*

With these principles in mind, the court considers whether Central United could have ascertained intelligently that the Complaint was removable at the time it was served.

Defendants removed this action on the ground that Johnson, the resident defendant, was fraudulently joined, and, therefore, there is complete diversity among the parties for purposes of establishing subject-matter jurisdiction.  "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).  Joinder is fraudulent, for purposes of determining if removal is proper, if "there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant." *Id.* (citing *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983), *superceded on other grounds by*

*statute as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993)). Thus, in order for this court to determine whether the plaintiffs fraudulently joined Johnson, it must determine whether there is any possibility that plaintiffs can prove a cause of action against Johnson. Clearly, plaintiffs have no chance of proving a fraud claim against Johnson based on his 1993 representation that the policy would pay the "actual costs" of Mr. Farley's cancer treatment because such representation was true at the time Johnson made the representation.

In order to recover against Johnson on a claim of fraud or misrepresentation under Alabama law, plaintiffs must establish "the elements of fraud, that is, whether [Johnson] made a false representation of an existing fact, whether [plaintiffs] reasonably relied on that representation, and whether, as a proximate result of that reliance, [plaintiffs were] damaged. *See Delta Health Group, Inc. v. Stafford*, No. 1021675, 2004 WL 406760, at *9 (Ala. March 5, 2004)(citing *Boackle v. Bedwell Constr. Co.*, 770 So.2d 1076 (Ala. 2000); *Ex parte Alabama Dep't of Transp.*, 764 So.2d 1263 (Ala. 2000); *Brushwitz v. Ezell*, 757 So.2d 423 (Ala. 2000)). A misrepresentation claim fails if "the representations were not false". *See Levett v. Independent Life and Acc. Ins. Co.*, 814 F. Supp. 1053, 1057 (M.D. Ala. 1993). "Absent a false statement there can be no reliance, justifiable or otherwise, that gives rise to this action [for fraud]." *Id.*

Based on the record before the court, plaintiffs cannot prove that Johnson made any false statement or misrepresentation related to payments under the Commonwealth policy. The evidence is undisputed that in 1993 Johnson told plaintiffs that the policy at issue paid

8

the "actual costs" of cancer treatment, which plaintiffs contend is the so-called "list price" of the treatment, and, for almost ten years, this representation was an accurate statement of how benefits were paid under the policy. The court finds plaintiffs cannot prove any misrepresentation by Johnson in 1993; thus, the court finds plaintiffs fraudulently joined Johnson in this action.

The next issue for the court to determine is whether defendants could have intelligently ascertained that the case was removable based on the Complaint, as well as "any information [defendants] may [have been] charged with under the law" at the time they were served with the Complaint. See *Clingan*, 244 F. Supp. 2d at 1303.

As set forth above, the Complaint alleges that, in 1993 while acting as an agent of Commonwealth, Johnson represented that the policy would pay the "actual charges," or the so-called "list price," for Mr. Farley's cancer treatment. The court finds that defendants are charged with knowing the language of the policy, which states that it would pay the "actual charges" incurred for cancer treatments. (*See* Def. Resp. to Mot. to Remand, ex. B at 4.) Also, the Complaint alleges that years after Johnson sold the Farleys the policy Central United acquired that policy from Commonwealth. After Central United purchased the policy from Commonwealth, Mr. Farley was diagnosed with cancer, was treated for cancer for the first time, and submitted his providers' statements to Central United for payment. Central United paid the so-called "list price" for these treatments.

However, in 2003, after Mr. Farley's cancer returned, Central United "failed or refused to pay to Plaintiffs the actual charges incurred for [Mr. Farley's] cancer treatments,"

9

and paid to plaintiffs only those sums not paid by Medicare and Blue Cross Blue Shield of Alabama. (Doc. 1, Ex. A at 3.) Central United is charged with knowledge of the facts that it first paid Mr. Farley's claims in the manner plaintiffs allege Johnson represented such claims would be paid, and that it later changed the manner in which it paid Mr. Farley's claims because of its interpretation, or reinterpretation, of his policy almost ten years later.

These facts, which are set forth in the Complaint or were within Central United's knowledge at the time it was served with the Complaint, demonstrate that Johnson – when he spoke with the Farleys as an agent of Commonwealth in 1993 – accurately told the Farleys what the policy stated and how Commonwealth would interpret and pay claims under the policy. Indeed, the Farleys actually received payments in accordance with Johnson's representation until Central United changed the way it interpreted the policy term "actual cost" in 2003. Therefore, at the time Central United was served with the Complaint, it knew that Johnson's representation was true at the time made and that such representation continued to be true for the next ten years. Consequently, the court finds that Central United was able to ascertain intelligently that the requisites of removability were present when it was served with the Complaint.

Based on the court's findings, Central United was required to file its Notice of Removal within 30 days of its receipt of the Complaint pursuant to 28 U.S.C. § 1446(b). Because Central United filed its Notice for Removal more than 30 days after it received the Complaint from which it could have ascertained intelligently that the case was removable, its Notice of Removal was untimely filed.

## B. WAIVER

Central United contends that plaintiffs have waived their right to object to the untimeliness of their Notice of Removal "by affirmatively engaging in the litigation process in this Court and by utilizing the discovery powers of this Court without objecting to this Court's jurisdiction." (Def. Resp. to Mot. to Remand at 24.) It contends that plaintiffs affirmatively engaged in the litigation process in this court because they served interrogatories and requests for production on January 5, 2004. (*See id.* at 24 and ex. K.)

The Eleventh Circuit defines "waiver" as "the intentional relinquishment or abandonment of a known right." *United States v. Davenport*, 151 F.3d 1325, 1329 n.4 (11th Cir. 1998)(quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)(quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))); *see also Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir. 1994)("Waiver is the voluntary, intentional relinquishment of a known right."). Therefore, to waive their right to object to the timeliness of the Notice of Removal, plaintiffs' actions of engaging in discovery must "take the form of affirmative conduct or unequivocal assent of a sort which would render it offensive to fundamental principles of fairness to remand." *Harris Corp. v. Kollsman, Inc.*, 97 F. Supp. 2d 1148, 1152 (M.D. Fla. 2000).

The Eleventh Circuit has not specifically addressed what type of behavior will constitute a waiver of the plaintiffs' right to object to a procedural defect in defendants' Notice of Removal pursuant to 28 U.S.C. § 1447(c). However, the court has held, without discussion, that "Section 1447 does not prevent a party from simultaneously objecting to a

federal forum *and* challenging the merits of the underlying claim," and that the filing of a motion for new trial would not have waived their motion to remand back to state court. *See Resolution Trust Corp. v. Bakker*, 51 F.3d 242, 246 (11th Cir. 1995). The court also held, "The [plaintiffs] could have filed both [a motion to remand and a motion for new trial] at the same time, or noted in a timely Rule 59 motion that a motion to remand would be filed within the thirty-day time period required by § 1447." *Id.* (emphasis added). Certainly, if the filing of a motion for new trial does not waive the right to file a motion for remand based on defects in the Notice of Removal, the exchange of discovery, especially without a request for court intervention, cannot be said to constitute a waiver of plaintiffs' right to file a motion to remand.

Section 1447(c) provides, "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c). This court will not "lightly strip [plaintiffs] of their statutory rights" to object to the untimely filing of the Notice of Removal. *Harris Corp.*, 97 F. Supp. 2d at 1152. Simply engaging in discovery, without more, is not an indication that plaintiffs voluntarily and intentionally waived their right to object to removal within the time established by 28 U.S.C. § 1447(c).

Because the court finds that this case was removable at the time it was filed and that plaintiffs have not waived their right to object to the untimeliness of defendants' Notice of Removal, the court finds that plaintiff's Motion to Remand is due to be granted and this case remanded to the Circuit Court of Jefferson County, Alabama, Bessemer Division.

## C. OTHER ISSUES

The parties also raise issues of whether defendants have established sufficiently that the jurisdictional amount exceeds $75,000, and whether the case should be remanded because defendants failed to include "a copy of all process, pleadings, and orders" with the Notice of Removal. *See* 28 U.S.C. § 1446(a). The court pretermits discussion of these issues in light of its decision, set forth above, to remand this case to state court.

## III. CONCLUSION

For the foregoing reasons, the court is of the opinion that the matter was untimely removed and that it is due to be remanded to the Circuit Court of Jefferson County, Alabama, Bessemer Division. An order granting plaintiffs' Motion to Remand, (docs. 4), will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 27th day of August, 2004.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge